STATE of Utah, Plaintiff and Respondent,

v.

Gilbert HUNT, Defendant and Appellant.

No. 16437.

Supreme Court of Utah.

Feb. 14, 1980.

Robert J. Schumacher of Utah County Legal Defenders Assoc., Provo, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant, at the age of 16 years and 11 months, was certified by the Juvenile Court for Utah County to be tried as an adult on a charge of aggravated robbery. Thereafter, defendant was tried before the District Court for Utah County, sitting with a jury, which returned a verdict of guilty for violating Section 76–6–302, Utah Code Ann. 1953, as amended.[1] Defendant appeals.

On November 12, 1978, a man entered a gasoline service station in Springville, Utah, wearing a nylon stocking loosely over his head, and pointed a gun, with silencer attached, at the owner of the station. He demanded and took all the money in the till. The owner recognized the man as the defendant, whom she had known for some time. At the time of these events defendant was a fugitive, having escaped from the Utah Youth Development Center.

Approximately one month later, defendant was arrested in Colorado and held there until he was transported back to this State by Utah County Police Officers. During the six and one-half hour drive to Utah, an Officer Sharp advised defendant of his constitutional rights by reading a "*Miranda*"[2] card, and asked defendant if he understood these rights, and if he wanted to answer questions. Defendant responded affirmatively, and thereafter made statements to the officers which connected him with the crime in Springville.

At the trial, Officer Sharp testified, relating the statements made by defendant. Defendant made no objection to this testimony on direct examination. Instead, on cross examination, defendant established that his parents or guardian had not been contacted and no one other than defendant had waived his "*Miranda*" rights prior to the time the statements were made. Defense counsel then moved to strike the officer's testimony on that basis, which motion was denied.

Defendant now appeals, citing as error, the admission of this testimony, contending that a juvenile's confessions and admissions against his interest are inherently involuntary when made without the advice of a parent, adult friend or an attorney, regardless of the *Miranda* warnings.[3] Secondly, defendant contends that the interrogation by the police during the six and one-half hour journey from Colorado constitutes a violation of Section 78–3a–29, noted infra, and renders any statements made by the

---

1. All references are to Utah Code Ann. 1953, as amended, unless otherwise specifically indicated.

2. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Defendant does not challenge the officer's testimony that he was advised of his constitutional rights in accordance with *Miranda v. Arizona*, supra, note 2.

juvenile during that time inadmissible. Finally, defendant argues that until he was certified to be tried as an adult, defendant was under the jurisdiction of the Juvenile Court, and statements made by him during that time are inadmissible as a matter of fundamental fairness, and should have been excluded under Section 78–3a–44(3).

The facts of this case are similar to those in *State v. Mares*, 113 Utah 225, 192 P.2d 861 (1948), where this Court considered the admissibility of a confession made by a minor. In that case, Mares, at the age of 18 was arrested and charged with theft of an automobile, and later, murder. Mares admitted the theft to the Summit County Attorney who thereupon advised Mares that he should not make any admissions to him but should wait until Mares' father, mother, or a lawyer was present. Mares said he did not want a lawyer and did not want his father or mother notified. The next day, Mares was interrogated by two F.B.I. agents, who told Mares that he did not have to make any statements to them and that any statement he made would be used against him in a court of law. Mares consented to answer their questions, and during the four and one-half hour interrogation, confessed to the murder.

The evidence did not show any abuse, threats, coercion, or promises of reward or immunity on the part of the interrogating officers, but Mares contended that his confession was involuntary because of his youth, and coercion existed because of the length of the interrogation, the number of officers who were present, and the fact that Mares made the confession without the benefit of counsel. In light of *Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948) in which the U.S. Supreme Court stated that a child (there a fifteen year old) "[is] an easy victim of the law [and] cannot be judged by the more exacting standards of maturity," this Court considered Mares' contention and held that considering the facts and circumstances of the case, Mares was not made a victim of fear or panic or an object of police abuses, was not offered immunity, reward or consideration, was not denied his freedom of choice, and the confession was therefore voluntary.

The same circumstances are present in this case, and *Mares* would seem to be controlling here on the issue of whether the confession of a juvenile is inherently involuntary and inadmissible.

But defendant asserts that more recent decisions of the U.S. Supreme Court sustain his contention that juvenile confessions are inherently involuntary. We therefore must determine whether the reasoning of *Mares* withstands scrutiny in the light of recent developments in this area.

The U.S. Supreme Court has considered this issue in a number of cases since 1948, and has said:

If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair. [*In re Gault*, 387 U.S. 1 at page 55, 87 S.Ct. 1428, at page 1458, 18 L.Ed.2d 527 (1967).]

Gault was not advised of his constitutional rights as was defendant in this case, but a simple application of *Miranda* does not finally resolve the question, as the U.S. Supreme Court has also held youthful confessions involuntary in spite of the fact that the child was advised of his rights to the same extent as would be considered sufficient were he an adult. In *Gallegos v. Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962) where the defendant was only 14 years of age, the Court said:

The prosecution says that the youth and immaturity of the petitioner and the five-day detention are irrelevant, because the basic ingredients of the confession came tumbling out as soon as he was arrested. But if we took that position, it would, with all deference, be in callous disregard of this boy's constitutional rights. He cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his

admissions. He would have no way of knowing what the consequences of his confession were without advice as to his rights—from someone concerned with securing him those rights—and without the aid of more mature judgment as to the steps he should take in the predicament in which he found himself. A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. Without some adult protection against this inequality, a 14-year old boy would not be able to know, let alone assert, such constitutional rights as he had. [370 U.S. at 54, 82 S.Ct. at 1212–1213]

Defendant contends that a proper interpretation of *Gallegos* requires the exclusion by the Court of all statements made by a juvenile if made without the advice of a parent, adult friend or an attorney. We are not persuaded, however, that a child is necessarily incompetent to waive his rights because of his infancy[4]; nor do we agree that such a choice should lie with a child's parent, adult friend or attorney. The question of whether a juvenile has intelligently, knowingly and voluntarily waived his constitutional rights must be determined from all of the circumstances of a particular case, as the Court held, in *Gallegos*:

> There is no guide to the decision of cases such as this, except the totality of circumstances that bear on the two factors we have mentioned. The youth of the petitioner, the long detention, the failure to send for his parents, the failure immediately to bring him before the judge of the Juvenile Court, the failure to see to it that he had the advice of a

lawyer or a friend—all these combine to make us conclude that the formal confession on which this conviction may have rested (see *Payne v. Arkansas*, 356 U.S. 560, 568 [78 S.Ct. 844, 850, 2 L.Ed.2d 975]) was obtained in violation of due process. [370 U.S. at 55, 82 S.Ct. at 1213.]

Defendant argues that several jurisdictions have adopted the rule that a juvenile's waiver of his right of silence is invalid per se, unless made with the advice of his parent, adult friend or attorney.[5] But, we believe, the better reasoned cases are those from the great majority of jurisdictions, which have adopted the "totality of the circumstances" rule, as we do now, in determining whether the juvenile's confession is in fact voluntary. The rule is best expressed in *People v. Lara*, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967):

> This, then, is the general rule: a minor has the capacity to make a voluntary confession, even of capital offenses, without the presence or consent of counsel or other responsible adult, and the admissability of such a confession depends not on his age alone but on a combination of that factor with such other circumstances as his intelligence, education, experience, and ability to comprehend the meaning and effect of his statement. [62 Cal. Rptr. at 599, 432 P.2d at 215.]

Those states which have adopted the totality of the circumstances rule[6] consider age, and the presence of parent, friend or attorney as only two of several factors to be considered in determining the capacity of a particular juvenile to waive his rights. Also to be considered are the child's intelligence or educational level, his state of mind during the interrogation; viz., whether he was confused or fearful, and his prior expe-

---

4. See Mr. Justice Frankfurter's concurring opinion in *Haley v. Ohio*, supra.

5. See for example, *J.T.P. v. State*, Okl.Cr., 544 P.2d 1270 (1975); *Lewis v. State*, 259 Ind. 431, 288 N.E.2d 138 (1972); *Commonwealth v. Markle*, 475 Pa. 266, 380 A.2d 346 (1977); *E.A.W. v. State*, 547 S.W.2d 63 (Tex.Civ.App.1977).

6. See *State v. Toney*, 113 Ariz. 404, 555 P.2d 650 (1976); *People v. Magee*, 217 Cal.App.2d

443, 31 Cal.Rptr. 658 (1963); *State v. Francois*, Fla., 197 So.2d 492 (1967); *People v. Connolly*, 33 Ill.2d 128, 210 N.E.2d 523 (1965); *In Interest of Shutters*, 56 Ill.App.3d 184, 13 Ill.Dec. 198, 370 N.E.2d 1225 (1977); *Bean v. State*, 234 Md. 432, 199 A.2d 773 (1964); *People v. De Flumer*, 21 App.Div.2d 959, 251 N.Y.S.2d 814, affd. 16 N.Y.2d 20, 261 N.Y.S.2d 42, 209 N.E.2d 93 (1965).

rience with the police and the criminal process. These factors must be taken into consideration as well as the questions of duress, threats, promises or other coercion traditionally considered in reviewing the confession of an adult defendant.

■ In this case, there is no evidence of physical abuse, and no threats or promises made on the part of the police. Defendant was advised of his constitutional rights. He was nearly 17 years old, and the record shows that he was sophisticated and was not confused when he spoke to the police. The Juvenile Court, on the basis of his prior record in that court, determined he was sufficiently mature to be tried as an adult. The Juvenile Court's determination in that proceeding has not been challenged here. This record shows that defendant was not unfamiliar with police methods nor with criminal process.

Under all of these circumstances, we hold that the Court did not err in determining that defendant's statements to the police were made voluntarily, nor in refusing to strike the officer's testimony on the ground that no parent, adult friend or attorney was present during this interrogation.

Defendant's second point on appeal is that the police were in violation of Section 78–3a–29, and that such a violation renders his statements inadmissible as evidence. That Section provides:

78–3a–29. A child may be taken into custody by a peace officer without order of the court (a) when in the presence of the officer the child has violated a state law, federal law or local law or municipal ordinance; (b) when there are reasonable grounds to believe that he has committed an act which if committed by an adult would be a felony; (c) when he is seriously endangered in his surroundings, or when he seriously endangers others, and immediate removal appears to be necessary for his protection or the protection of others; (d) when there are reasonable grounds to believe that he has run away or escaped from his parents, guardian, or custodian.

A private citizen or a probation officer may take a child into custody if the circumstances are such that he could make a citizen's arrest if an adult were involved. A probation officer may also take a child into custody under the circumstances set out in the preceding paragraph, or if the child has violated the conditions of probation, provided that the child is under the continuing jurisdiction of the juvenile court or in emergency situations in which a peace officer is not immediately available.

When an officer or other person take a child into custody, he shall without unnecessary delay notify the parents, guardian, or custodian. The child shall then be released to the care of his parent or other responsible adult unless his immediate welfare or the protection of the community requires that he be detained. Before the child is released, the parent or other person to whom the child is released may be required to sign a written promise, on forms supplied by the court, to bring the child to the court at a time set or to be set by the court.

A child shall not be detained by the police any longer than is reasonably necessary to obtain his name, age, residence and other necessary information, and to contact his parents, guardian or custodian. If he is not thereupon released as provided in the preceding paragraph, he must be taken to the court or to the place of detention or shelter designated by the court without unnecessary delay.

The officer or other person who takes a child to a detention or shelter facility must notify the court at the earliest opportunity that the child has been taken into custody and where he was taken; he shall also promptly file with the court a brief written report stating the facts which appear to bring the child within jurisdiction of the juvenile court and giving the reason why the child was not released.

Defendant relies on the fourth paragraph of this statute. Defendant acknowledges that this statute is not meant to prevent the police from undertaking routine investiga-

tory questioning of juveniles who are arrested. But, he argues, the interrogation during the six and one-half hour drive from Colorado was unreasonably lengthy. And he urges this Court to interpret § 78–3a–29 to allow police interrogation only after a juvenile has been presented to the juvenile authorities.

■ It is clear, in reviewing the entire statute, rather than the fourth paragraph in isolation, that it does not basically govern police interrogation of juveniles. The dominant purpose of the statute is to provide guidelines for arrest and either release or placement of a juvenile in detention facilities separate from adult facilities. The statute provides for arrest and detention of juveniles on four separate and dissimilar grounds; i. e., when a child has committed (a) a misdemeanor, (b) a felony, (c) is abused, and is in need of protection, or (d) has committed a status offense. Police interrogation must necessarily differ considerably in each of these four cases, and the four situations cannot be treated equally for that purpose.

Police interrogation must, of course, always be reasonable, and police must conduct such interviews in a responsible manner. Unnecessarily lengthy interrogation is suspect. But Officer Sharp's testimony shows that this interrogation was not abusive, intensive, nor indeed, very lengthy.[7] Defendant did not offer any evidence to the contrary. The six and one-half hour drive from Colorado is normal driving time, and was not in the circumstances of this case unreasonable.

In sum, our comments here are not to be construed, of course, as reducing the vitality of the fourth paragraph of § 78–3a–29. Rather, these comments constitute interpretation of this paragraph in context with other language of the statute—and the key is that detention by police of a juvenile for interrogation must not be more extended than is "reasonably necessary".

■ Finally, defendant argues that the use of this evidence in the District Court is prohibited by the provisions of § 78–3a–44(3) and by fundamental fairness.

Section 78–3a–44(3) provides:

Neither the record in the juvenile court nor any evidence in the juvenile court shall be admissible as evidence against the child in any proceedings in any other court, with the exception of cases involving traffic violations.

As defendant was not charged nor tried in the Juvenile Court for this crime, the evidence which defendant wishes to exclude was not presented there as evidence, nor was the Juvenile Court's record presented in the District Court. Nevertheless, defendant argues that in *Harling v. U. S.*, 111 U.S.App.D.C. 174, 295 F.2d 161 (D.C.Cir. 1961), the United States Court of Appeals for the District of Columbia interpreted a similar statute to exclude from use in an adult criminal court all damaging statements made by a juvenile prior to the time the Juvenile Court had waived its exclusive and original jurisdiction. The Circuit Court also stated therein that "fundamental fairness" required such exclusion. This determination, however, was made on the basis

---

7. The officer's entire testimony concerning defendant's statements, again after the *Miranda* warning, was:

Well, it was a long trip, it was about six hours long, six and one-half hours to drive back from Grand Junction. And the first thing I asked him, I said: "Gilbert, why did you get your hair cut? I noticed your hair's cut." And he says, "Well, I didn't want anybody to recognize me." And I said, "What about the nylon sock you had over your head at the armed robbery at Springville?" I said, "Couldn't you get it down over your head?" He said, "No, I couldn't get it all of the way over my head." Also, I asked him, I said:

"Why did you go back to the 76 station about a week later after the robbery?" He said: "I needed to use the phone there, had to go back and use the phone. I wanted to see if anybody noticed me." And I said: "I know you ran that night when the police showed up, and where had you run?" He said: "I ran up Hobble Creek." I said: "You mean you stayed right in the creek?" He said: "Yes. I was right in the water." He said: "I about froze that night." He told me he went right directly toward Hobble Creek Canyon, and that was about, oh, that was about all he said on the way back.

that under that Court's applicable law, a juvenile was under the jurisdiction of the Juvenile Court from the time he committed an offense, and was exempt from the criminal law unless and until the Juvenile Court waived its jurisdiction. As he was exempt from the criminal law, the constitutional safeguards afforded adult criminal defendants did not apply.

In *Harling*, the Court observed that the constitutional safeguards afforded defendants in criminal proceedings would be wholly inappropriate for the flexible and informal procedures of the Juvenile Court which are essential to its *parens patriae* function.[8] We believe this case lacks force as it was decided prior to *Gault*, supra, in which the U.S. Supreme Court ruled that juveniles are entitled to certain constitutional rights even within the environs of the Juvenile Court in spite of its status of *parens patriae*, and its focus on the best interest of the child.

The *Harling* case has not been generally followed,[9] and we do not believe our statute is as amenable to such a rule as that which the D.C. Circuit Court interpreted. The evidence sought to be excluded here was never presented to the Juvenile Court, and is not part of its record. Rather it is information obtained in the investigatory procedures of the police, who do not have a *parens patriae* relationship with a child, and are not viewed by him as such.

The Oregon Supreme Court considered this question, and rejected the *Harling* rule on the basis that the police do not have a *parens* relationship with a child in *State v. Gullings*, 244 Or. 173, 416 P.2d 311 (1966). There, the Court acknowledged that the integrity of the Juvenile Court might be threatened if information secured from the

juvenile without regard for constitutional safeguards while he was under the jurisdiction of that Court were later used against him in an adult criminal court. But there, as here, the evidence was obtained by the police during its investigatory process, and there, as here, the defendant was advised of his constitutional rights. There, as here, defendant had not been referred to the Juvenile Court prior to making his statements, and those statements were not, therefore, part of the juvenile court record, nor part of the evidence in the Juvenile Court. The Oregon Court said:

> So long as information is available which meets constitutional criminal due process standards and which was not secured through the close relationship between court worker and child, the safety and security of the law-abiding public requires its use in adult criminal proceedings. [416 P.2d at 314]

We believe the Oregon rule in *Gullings* to be the better reasoned rule. In view of the age of the defendant, and other circumstances of this case, we hold that his statements made to the police were not made involuntarily, and the District Court did not err in admitting this evidence.

Affirmed.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.

**8.** See *Harrison v. U. S.*, 123 U.S.App.D.C. 230, 359 F.2d 214 (D.C.Cir. 1965), where it appears there was a conflict in the same Court as to the applicability of the *Harling* rule.

**9.** See, however, *State v. Maloney*, 102 Ariz. 495, 433 P.2d 625 (1967), which applied the *Harling* rule even in the light of *Gault*.