**2015 UT App 14**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF P.G., A PERSON UNDER
EIGHTEEN YEARS OF AGE.

P.G.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20130376-CA
Filed January 23, 2015

Third District Juvenile Court, West Jordan Department
The Honorable Julie V. Lund
No. 1073898

Loren M. Lambert and David S. Head, Attorneys
for Appellant

Sean D. Reyes and Christopher D. Ballard,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE PAMELA
T. GREENWOOD concurred.[1]

ORME, Judge:

¶1      In September 2012, seventeen-year-old P.G. was arrested
based on his five-year-old sister's allegations that he had sexually

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by
special assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

abused her.[2] At the police station, a detective took P.G. to a small room to be interviewed. The detective read P.G. his *Miranda* rights at the beginning of the interview, and P.G. stated that he understood his rights. During the interview, P.G. repeatedly denied touching M.G., his sister. Ultimately, however, he confessed that his fingers accidentally went inside M.G.'s vagina on one occasion as he was helping her get dressed for school. P.G. was charged with aggravated sexual abuse of a child, and the matter was adjudicated in juvenile court. Before his adjudication, P.G. filed a motion to suppress his confession, which the juvenile court denied. He was then adjudicated as delinquent for aggravated sexual abuse of a child. P.G. now appeals. We affirm.

## I.

¶2     On appeal, P.G. first argues that the juvenile court erred in denying his motion to suppress his confession. Specifically, he argues that his confession was coerced while he was in police custody. "In an appeal from a trial court's denial of a motion to suppress evidence, 'we review the trial court's factual findings for clear error[,] and we review its conclusions of law for correctness.'" *Salt Lake City v. Bench*, 2008 UT App 30, ¶ 5, 177 P.3d 655 (alteration in original) (quoting *State v. Tiedemann*, 2007 UT 49, ¶ 11, 162 P.3d 1106).

¶3     The Fifth Amendment to the United States Constitution "protects individuals from being *compelled* to give evidence against themselves." *State v. Rettenberger*, 1999 UT 80, ¶ 11, 984 P.2d 1009 (emphasis in original) (citations and internal quotation marks omitted). We examine the "totality of circumstances to determine whether a confession [has] been made freely, voluntarily[,] and without compulsion or inducement of any sort." *Id.* ¶ 14 (citations and internal quotation marks omitted).

---

2. On appeal from a delinquency adjudication, we recite the facts in the light most favorable to the factfinder's decision. *See In re J.F.S.*, 803 P.2d 1254, 1254 (Utah Ct. App. 1990).

¶4     The totality of circumstances includes "both the characteristics of the accused and the details of the interrogation." *State v. Strain*, 779 P.2d 221, 225 (Utah 1989) (citations and internal quotation marks omitted). *Accord Rettenberger*, 1999 UT 80, ¶ 14. Some of the relevant circumstances surrounding an interrogation include "the duration of the interrogation, the persistence of the officers, police trickery, absence of family and counsel, and threats and promises made to the defendant by the officers." *Rettenberger*, 1999 UT 80, ¶ 14. Relevant characteristics of the accused include "the defendant's mental health, mental deficiency, emotional instability, education, age, and familiarity with the judicial system." *Id.* ¶ 15.

¶5     Before the juvenile court, the State bore the burden of establishing that P.G.'s statements were voluntarily made and were not a product of coercion. *See State v. Allen*, 839 P.2d 291, 300 (Utah 1992) ("In the face of a challenge to the voluntariness of a statement or confession, it is incumbent upon the prosecution to demonstrate by a preponderance of the evidence that the statement was made voluntarily based upon the totality of the circumstances."). The juvenile court concluded that the State met its burden in this case. It found, among other things, that P.G. was nearly eighteen at the time of his interview, that he was an average high school student with no prior experience with law enforcement, that he was read his *Miranda* rights at the outset of the interview and indicated that he understood them, that while the detective was aggressive at times the level of aggression did not amount to coercion, that P.G. provided details that were not suggested by the detective, and that the interview lasted about forty minutes.

¶6     On appeal, it is P.G. who bears the burden of demonstrating legal error in the juvenile court's determination. *See Latimer v. Katz*, 508 P.2d 542, 545 (Utah 1973) (noting that the burden is on the appellant to show that the trial court's findings and conclusions are in error). P.G. begins his analysis by demonstrating that he was in police custody at the time of the interview. He clearly was, and he was advised of his *Miranda* rights—a step that is constitutionally

mandated only in conjunction with "custodial interrogation." *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

¶7     In contending that his confession was coerced under the "totality of circumstances," P.G. references *State v. Bybee*, 2000 UT 43, 1 P.3d 1087, and *State v. Hunt*, 607 P.2d 297 (Utah 1980). Citing *Bybee* and *Hunt*, he concludes his analysis of the governing legal principles with this sentence:

> For example, some relevant circumstances are: the juvenile's age, intelligence, and education; the juvenile's ability to understand the effect and meaning of his or her statement; the juvenile's previous experience with the police; whether an attorney or parent was present; whether the juvenile is confused or fearful; and any duress, threats, promises or coercion involved in the custodial interrogation.

In the three pages of his opening brief devoted to developing his argument, he does not cite any additional legal authority or even revisit the principles of *Bybee* and *Hunt* as they apply to the facts found by the juvenile court.[3] Instead, he rehearses the details of the interview and then concludes that "[b]ased on [his] lack of experience with the police and the criminal process, his parents or attorney not being present during the interrogation, his confusion and fear, and due to the very coercive nature of the custodial interrogation, [his] admission and statement were not voluntary."

¶8     The State's assessment of P.G.'s briefing of this issue is correct: P.G. "provides no authority to support his argument that

---

3. We have previously noted that bald citation to legal authority, without analysis tied to the facts of the case at hand, is inadequate to discharge an appellant's burden of persuasion. *See Nipper v. Douglas*, 2004 UT App 118, ¶ 19, 90 P.3d 649. *See also* Utah R. App. P. 24(a)(9).

the circumstances of his confession demonstrate that it was coerced"; rather, "he simply describes the circumstances and concludes that they were coercive." The State stops short, however, of asking us to summarily affirm on the ground of inadequate briefing. On the contrary, the State undertakes the heavy lifting that is properly the responsibility of P.G. and analyzes the circumstances of the interrogation that P.G. apparently finds concerning, in light of the extensive case law on point.[4] Having done so, it correctly concludes that the governing case law "demonstrates that none of these circumstances, either alone or together, were coercive."

¶9    In view of the odd way in which this appeal has unfolded, with P.G. essentially taking the position that the record speaks for itself in establishing coercion, and the State ferreting out what it gathers to be P.G.'s pivotal concerns and then running each of them through the strainer of Fifth Amendment jurisprudence, we are disinclined, given P.G.'s poorly focused totality-of-circumstances argument, to give plenary consideration to all fifteen of the circumstances that the State gathers may be in play. Rather, we believe that four factors emerge as having particular importance, meriting specific comment.

¶10    First, while "[u]nnecessarily lengthy interrogation is suspect," *State v. Hunt*, 607 P.2d 297, 302 (Utah 1980), P.G.'s interrogation lasted only about forty minutes. Under similar circumstances, we have determined that interrogations for similar—and even significantly longer—periods of time are acceptable. *See, e.g., State v. Prows*, 2011 UT App 9, ¶ 10, 246 P.3d 1200 (concluding that a fifty-one minute interrogation was "quite short" and not coercive); *State v. Montero*, 2008 UT App 285, ¶ 12, 191 P.3d 828 (concluding that an interrogation that was "off and

---

4. Underscoring the cursory approach undertaken in briefing by P.G., while P.G. cites two cases in support of the scattergun argument presented in his opening brief, the State cites some nineteen cases in support of its thorough and incisive analysis.

on" for over six hours was not coercive and observing that "an interrogation has typically been viewed as coercive only when it is much longer than in the instant case"). Given that P.G.'s forty-minute interrogation was comparatively short, we cannot say that the mere length of P.G.'s interrogation suggests coercion.

¶11 Second, the detective's persistence during P.G.'s interrogation does not undermine the juvenile court's finding that "[w]hile the detective's manner was rather aggressive at times it did not rise to the level of being coercive." For example, during P.G.'s interrogation, the detective repeatedly told P.G. that he already knew that P.G. sexually assaulted M.G., he refused to accept P.G.'s denials, and he shouted once at P.G. to "stop lying." However, "a police officer's exhortations to tell the truth or assertions that a suspect is lying do not automatically render a resulting confession involuntary." *Montero*, 2008 UT App 285, ¶ 13. To the contrary, "we think it eminently reasonable that police officers challenge criminal suspects' questionable explanations in their pursuit of the truth." *Id.* Here, the detective was not merely posturing. He had substantial evidence prior to the interrogation that P.G. sexually abused M.G. M.G. had already told a school counselor, another school employee, and another detective about P.G.'s abuse. P.G.'s younger brother also told the other detective that P.G. had informed their mother about the abuse. Thus, although the interviewing detective was persistent and his interrogation techniques were sometimes aggressive, these facts do not serve to render P.G.'s confession involuntary.[5]

---

5. P.G. also claims that his confession was involuntary because the police did not inform him that he was free to end the interrogation by leaving at any time. However, P.G.'s contention is wide of the mark because, as we gather from the record, he was *not* free to leave. "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per

(continued...)

¶12　Third, although neither P.G.'s parents nor his attorney were present during his interrogation, these facts are not determinative. *See State v. Dutchie*, 969 P.2d 422, 429 (Utah 1998). *Cf.* Utah R. Juv. P. 26(e) ("A minor 14 years of age and older is presumed capable of intelligently comprehending and waiving the minor's right to counsel . . . whether [or not] the minor's parent, guardian or custodian is present."). P.G. did not request to speak to his parents or an attorney prior to or during the interrogation. Instead, after the detective read P.G. his *Miranda* rights at the beginning of the interrogation, P.G. affirmatively stated that he understood his rights and agreed to speak to the detective. Accordingly, the absence of P.G.'s parents or an attorney during his interrogation does not undermine the juvenile court's finding that his confession was voluntary.

¶13　Fourth, P.G.'s age does not render his confession involuntary. Although P.G. was a juvenile at the time of his

---

5. (...continued)
curiam). This court has held that "the proper inquiry as to whether a defendant is in custody for the purposes of *Miranda* is whether a reasonable person in defendant's position would believe his 'freedom of action is curtailed to a degree associated with a formal arrest.'" *State v. Mirquet*, 844 P.2d 995, 998 (Utah Ct. App. 1992) (quoting *State v. East*, 743 P.2d 1211, 1212 (Utah 1987)).

　　　Here, P.G. was formally arrested at his home, taken to the police station, and informed of his *Miranda* rights. Thus, he was in custody for *Miranda* purposes, even though at one point the detective said he was not. While P.G. was free to invoke his *Miranda* rights at any time during the interrogation, he was not free to leave. *See State v. Gutierrez*, 864 P.2d 894, 902 (Utah Ct. App. 1993) ("Suspects undergoing custodial interrogation could reasonably assume that even the right to terminate questioning does not afford them the option of leaving the interrogation room."). Consequently, the fact that P.G. was not told he could leave is simply beside the point.

interrogation, he was seventeen years and eight months old—just four months shy of the age of majority. *See State v. Bybee*, 2000 UT 43, ¶ 20, 1 P.3d 1087 (concluding that Bybee's age of "nearly seventeen and one-half years old at the time of [his] interview—less than seven months short of reaching his majority"—supported the trial court's conclusion that he voluntarily confessed). On several occasions, the Utah Supreme Court has found juveniles younger than P.G. to have voluntarily confessed. *See, e.g.*, *Dutchie*, 969 P.2d at 427–28, 430 (fifteen-year-old); *State v. Piansiaksone*, 954 P.2d 861, 863, 866 (Utah 1998) (sixteen-year-old); *State v. Hunt*, 607 P.2d 297, 298, 303 (Utah 1980) (almost seventeen-year-old). Accordingly, P.G.'s age does not undermine the juvenile court's determination that his confession was voluntary under the Fifth Amendment.

¶14 Looking at the totality of circumstances, neither P.G.'s interrogation nor his personal characteristics persuade us that his confession was involuntary. Thus, we conclude that the juvenile court did not err when it denied P.G.'s motion to suppress his confession.

## II.

¶15 P.G.'s second argument on appeal is that the juvenile court erred by allowing M.G. to testify in a child witness room because there was no "finding that M.G. would be traumatized if she were required to testify in [P.G.'s] presence." At P.G.'s adjudication hearing, M.G. started crying before giving her testimony. The court suggested that M.G. be allowed to testify from its child witness room, which was equipped with two-way audio and video technology. M.G. was subsequently excused to the child witness room.

¶16 "[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). "Although face-to-face confrontation forms the core of the values furthered by the Confrontation Clause . . . it is not the *sine qua non* of the confrontation right." *Maryland v. Craig*, 497 U.S. 836, 847 (1990)

(citations and internal quotation marks omitted). Indeed, the United States Supreme Court has held that upon an adequate showing of necessity,

> the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

*Id.* at 855. *See also* Utah R. Juv. P. 29A(b) (permitting the same).

¶17    P.G. argues that the juvenile court could only allow M.G. to testify from the child witness room if it first made a formal finding of necessity, i.e., that it would traumatize M.G. to testify in P.G.'s presence in the courtroom. But P.G. failed to object to the use of the child witness room and therefore failed to preserve this issue for appeal. "In order to preserve an issue for appeal, it must be . . . *specifically* raised such that the issue is sufficiently raised to a level of consciousness before the trial court . . . [so as to give] the trial court an opportunity to address the claimed error, and if appropriate, correct it." *State v. Santonio*, 2011 UT App 385, ¶ 29, 265 P.3d 822 (alterations and emphasis in original) (citation and internal quotation marks omitted). Here, although the juvenile court did not make a finding of necessity before it allowed M.G. to testify from the child witness room, P.G. did not object to the room's use on that basis. Instead, his objection was to M.G.'s testifying from the room without the presence of P.G.'s counsel, the State's counsel, and the trial judge in the same room.[6] At no point

---

6.    P.G. argues that rule 29A(b) of the Utah Rules of Juvenile Procedure required counsel and the trial judge to be in the same room as M.G. during her testimony. Rule 29A(b) provides that "[i]n any delinquency proceeding . . . concerning a charge of child abuse or of a sexual offense against a child, the court . . . may order that

(continued...)

during the adjudication did P.G. object on the basis of a lack of necessity. On the contrary, he seems only to have been concerned about who would be in the child witness room, not whether the room would be used. Accordingly, P.G. did not preserve this issue for appeal.

¶18    Be that as it may, any error was harmless. "To hold a constitutional error harmless, we 'must be able to declare a belief' that the error 'was harmless beyond a reasonable doubt.'" *State v. Benson*, 2014 UT App 92, ¶ 30, 325 P.3d 855 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Here, M.G.'s testimony was

---

6. (...continued)
the testimony of any victim or other witness younger than 14 years of age be taken in a room other than the courtroom." Utah R. Juv. P. 29A(b). The rule further provides that "[o]nly the judge, attorneys for each party, the testifying child (if any), persons necessary to operate equipment, and a counselor or therapist whose presence contributes to the welfare and emotional well-being of the child *may* be in the room during the child's testimony." *Id.* R. 29A(b)(1) (emphasis added).

   P.G. insists that, in context, the word "may" means "must"—that the rule denies the juvenile court discretion to exclude counsel for the parties and the trial judge, because those key individuals "have to be present." That is not how we read the rule. Rule 29A(b)(1) limits those who may be in the child witness room to the listed individuals, but it does not *require* their presence. Rather, their presence is only an option, to be exercised in the juvenile court's discretion. The juvenile court decided not to allow counsel in the child witness room on the basis that it would defeat the purpose of using the room. Consequently, the juvenile court did not err in refusing to fill the child witness room with adults while the already-stressed M.G. testified. Of some concern, the court also noted that the room was too small to accommodate the witness, P.G.'s counsel, the prosecutor, and the judge. Obviously, the juvenile court's ability to properly exercise its discretion under the statute cannot be hamstrung by the physical limitations of the available room.

entirely favorable to P.G. She testified that she did not remember talking to her school counselor, the police, or a DCFS caseworker. When asked if she told anyone that P.G. "did some things" to her, M.G. answered "no." Although no one directly asked M.G. if P.G. ever touched her, M.G. also answered "no" when asked if she ever told a school employee, school counselor, police officer, or DCFS caseworker that P.G. had touched her inappropriately. Far from harming P.G., M.G.'s testimony was entirely exculpatory in nature. Therefore, even if the juvenile court committed error by permitting M.G. to testify in the child witness room without first making a finding of necessity, the error was harmless. Her testimony, whether offered in the courtroom or in a child witness room filled with adults, simply could not have been more favorable to P.G. Nor do we see merit in P.G.'s argument that M.G.'s testimony would have been given more weight, in this proceeding before a seasoned juvenile court judge, if offered in the courtroom rather than over a video feed from the room next door.

## III.

¶19   P.G.'s third and final argument on appeal is that the evidence was insufficient to prove beyond a reasonable doubt that he committed the crime of aggravated sexual abuse of a child. A person commits sexual abuse of a child if

> the actor touches the anus, buttocks, or genitalia of any child . . . with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

Utah Code Ann. § 76-5-404.1(2) (LexisNexis Supp. 2014).[7] Aggravated sexual abuse of a child occurs when one of several

---

7. Because the statutory provisions in effect at the relevant time do not differ materially from the statutory provisions now in effect, we cite the current edition of the Utah Code as a convenience to the reader.

enumerated conditions exists "in conjunction with the offense described in Subsection (2)." *Id.* § 76-5-404.1(4). One such condition is when "the accused caused the penetration, however slight, of the genital or anal opening of the child by any part or parts of the human body other than the genitals or mouth." *Id.* § 76-5-404.1(4)(j).

¶20    "When reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination[.]" *In re V.T.*, 2000 UT App 189, ¶ 8, 5 P.3d 1234. We will reverse that determination "only when it is 'against the clear weight of the evidence, or if [we] otherwise [reach] a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)).

¶21    As previously noted, M.G. testified at P.G.'s adjudication hearing and denied telling anyone that P.G. had abused her. Therefore, P.G. contends that because M.G.'s in-court testimony contradicted her out-of-court statements and because "there was not substantial independent evidence to corroborate" P.G.'s confession, there was not enough evidence to find P.G. delinquent beyond a reasonable doubt. We disagree. When the evidence is considered in the light most favorable to the juvenile court's determination, it supports the court's finding that the State met its burden of proof beyond a reasonable doubt.

¶22    P.G. voluntarily confessed to the detective that his fingers went inside M.G.'s vagina as he was helping her get dressed for school one morning, although he characterized this as accidental.[8] The juvenile court also found that he provided details about the abuse that were not suggested by the detective. As we concluded above, the juvenile court did not err when it refused to suppress P.G.'s confession. *See supra* ¶ 14. In addition to P.G.'s confession,

---

8. Somewhat inconsistently, he also mentioned that he was curious to know what a vagina felt like.

there was ample other evidence from which the juvenile court could find P.G. delinquent beyond a reasonable doubt.

¶23 The juvenile court heard testimony from an employee at M.G.'s school that M.G. told her "out of the blue" that P.G. had touched her in her vaginal area and that "blood had come out." M.G. then repeated the same story to both her school counselor and a detective who interviewed her at the Children's Justice Center. The detective who interviewed M.G. testified that she told him during the interview that her brother had touched her with his finger "where her pee pee comes out." The same detective also testified that P.G.'s brother told him that his mother learned that P.G. had touched M.G. inappropriately and that she yelled at P.G. and punished him with extra chores. Finally, even though M.G. ultimately denied telling anyone about the abuse by P.G., the school employee testified that on the morning of the hearing, M.G. told her that her mother "told her to say that P.G. didn't . . . hurt her." Thus, we conclude that notwithstanding M.G.'s recantation, there was sufficient evidence to support the juvenile court's determination that, beyond a reasonable doubt, P.G. perpetrated an act of aggravated sexual abuse.

¶24 P.G. also argues that the evidence was insufficient to support his delinquency adjudication under *State v. Mauchley*, 2003 UT 10, 67 P.3d 477. P.G.'s reliance on *Mauchley* is misplaced. In *Mauchley*, the Utah Supreme Court adopted the trustworthiness standard in lieu of the corpus delicti rule. *See id.* ¶ 61. The Utah Supreme Court has interpreted the trustworthiness standard as a rule governing the admissibility of confessions rather than a rule affecting the sufficiency of the evidence. *See id.* ¶¶ 58–60 (discussing the admissibility of confessions into evidence under the trustworthiness standard). Under the trustworthiness standard, "before a confession may be admitted, the trial court must determine as a matter of law that the confession is trustworthy." *Id.* ¶ 58. A confession may be admitted into evidence only after it is "deemed trustworthy by a preponderance of the evidence." *Id.* Here, P.G. did not claim that his confession was improperly admitted into evidence because it was not trustworthy. He argued that it was not voluntary under the Fifth Amendment, and he

claimed that the evidence was insufficient to corroborate his confession. Accordingly, aside from the misplaced focus on sufficiency instead of admissibility, P.G. did not preserve this issue for appeal.

¶25    "As a general rule, claims not raised before the trial court may not be raised on appeal," and we will not consider them unless "exceptional circumstances exist or plain error occurred." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (citations and internal quotation marks omitted). P.G. argues that he preserved his claim that his confession was inadmissible under the trustworthiness standard because he moved for a directed verdict due to an "insufficiency of evidence to convict P.G. and because there was an insufficiency of evidence to corroborate P.G.'s confession." But P.G. misstates the standard articulated in *Mauchley*. As noted, *Mauchley* concerns the admissibility of confessions themselves, not the sufficiency of the evidence. *See* 2003 UT 10, ¶¶ 58–60. Because P.G. failed to raise the issue of the admissibility of his confession on this ground and because he has not presented an argument in support of an exception to the preservation rule, we decline to address the merits of P.G.'s *Mauchley* argument.

IV.

¶26    We conclude that, given the totality of circumstances, the juvenile court did not err when it denied P.G.'s motion to suppress his confession. We further conclude that P.G. did not preserve his Confrontation Clause claim. Nevertheless, if the juvenile court committed any error in this regard, it was harmless. Finally, we conclude that there was sufficient evidence to find P.G. delinquent beyond a reasonable doubt on the charge of aggravated sexual abuse of a child. And we decline to address the merits of P.G.'s *Mauchley* argument because it was not preserved.

¶27    Affirmed.