2011 UT App 385

**STATE of Utah, Plaintiff and Appellee,**

v.

**Amador SANTONIO, Defendant and Appellant.**

**No. 20090359–CA.**

Court of Appeals of Utah.

Nov. 10, 2011.

Randall W. Richards, Ogden, for Appellant.

Mark L. Shurtleff, John J. Nielsen, and Kris C. Leonard, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Amador Santonio appeals his convictions for several offenses arising from his resisting arrest in 2003 and requests that we remand for a new trial in a different county. We affirm.

1. Because of the lengthy procedural history in this case, we highlight only those events that are relevant to the issues raised on appeal.

2. Where there have been no substantive amendments that are relevant under the facts of this case, we cite the current version of the Utah Code for the reader's convenience.

3. This was originally charged as attempted aggravated murder, but the charge was later amended.

## BACKGROUND [1]

¶ 2 On June 21, 2003, a police officer attempted to execute an arrest warrant against Santonio. Santonio tried to run away, and when the officer caught up with him, Santonio attempted to take the officer's gun. Santonio escaped from the officer on his bicycle. When several more officers arrived, they eventually located Santonio. While the officers were attempting to subdue Santonio, he injured one of them with a knife. Santonio was charged with disarming a police officer, a first-degree felony, see Utah Code Ann. § 76–5–102.8(2)–(3)(a) (Supp.2010);[2] aggravated assault, a third-degree felony, see id. § 76–5–103(1)–(2)(a);[3] assault against a police officer, a class A misdemeanor, see id. § 76–5–102.4(2)(a)(i); and interfering with a legal arrest, a class B misdemeanor, see id. § 76–8–305 (2008).[4]

¶ 3 While awaiting trial, Santonio was confined to the Utah County Jail and had to be transported for court hearings. On one occasion, Santonio refused to be transported when jail personnel came for him because he mistakenly believed that the hearing was scheduled for later in the day. Because Santonio refused to be transported, the trial court held him in contempt for failure to appear. Santonio challenged the ruling, which was upheld by a different judge following a hearing.

¶ 4 The charges against Santonio did not come to trial until March 2008, nearly five years after the events giving rise to the charges. In the interim, Santonio primarily represented himself. Although he was briefly represented by five different attorneys, each ultimately withdrew.[5] Santonio continually asserted that jail personnel had prevented him from seeking and communicating with potential attorneys. To assist him, the

4. A fifth charge of use of a dangerous weapon in a fight, a class A misdemeanor, see Utah Code Ann. § 76–10–506(2) (Supp.2011), was ultimately dismissed by the parties' stipulation.

5. According to the State, two of these attorneys were public defenders, appointed without a finding of indigency.

trial court granted him a number of continuances to give him additional time to obtain counsel and allowed him at least seventy-five phone calls for the purpose of communicating with potential attorneys.[6] Finally, in December 2006, the trial court admonished Santonio that if he did not find an attorney prior to his competency hearing he would have to go forward with the hearing pro se. In providing that warning, the trial court conducted a *Frampton* colloquy, *see generally State v. Frampton*, 737 P.2d 183, 187–88 & n. 12 (Utah 1987), discussing the risks of self-representation. When Santonio failed to obtain counsel by the time of the competency hearing on February 2, 2007, the trial court ruled that he had waived his right to counsel and ordered that he represent himself until he could obtain counsel.

¶ 5 Following the competency hearing, the trial court ruled that Santonio was competent to proceed to trial. The trial court's ruling was based on the testimony and reports of two experts, as well as the trial court's own observations of Santonio's "intelligence, logic, reasoning, and rational behavior." Although the trial court did acknowledge that Santonio suffered from a mental illness, which both experts testified to, it concluded that Santonio's mental illness did not prevent him from "hav[ing] a rational and factual understanding of the proceedings against him or of the punishment specified for the offense[s] charged" or from "consult[ing] with ... counsel and ... participat[ing] in the proceedings against him with a reasonable degree of rational understanding," *see* Utah Code Ann. § 77–15–2 (2008).

¶ 6 At his arraignment on September 5, 2007, Santonio pleaded not guilty by reason of insanity. The trial court ordered Santonio to undergo a mental evaluation and expressly asked the evaluator, "Did the defendant, at the time of the offense, suffer from a mental illness, as defined in [Utah Code section] 76–2–305(4)(a), that prevented him from forming the intent to intentionally, knowingly, or recklessly commit the crimes with which he is charged?" Subsequently, Santonio filed a Motion for New Evaluations and a Motion to Suppress and Limit Testimony, arguing that the question about his intent was inappropriate and that the evaluators were not objective. The trial court denied his motions.[7]

¶ 7 Prior to trial, Santonio also submitted a Motion for Access to Disc Checked into Evidence, requesting access to a computer disc containing certain photographs. This motion was denied.

¶ 8 By the time of trial in March 2008, Santonio still had not obtained an attorney, and he represented himself at trial. Prior to trial, Santonio submitted proposed jury instructions, which included an instruction on attempt. The trial court rejected Santonio's proposed attempt instruction because it concluded that the attempt statute, *see* Utah Code Ann. § 76–4–101 (2008), does not apply to assault or disarming a police officer because those charges already contain an attempt element, *see id.* § 76–5–102(1)(a); *id.* § 76–5–102.8(2) (Supp.2011). After a three-day trial, the jury convicted Santonio of all charges, finding that he did not suffer from a mental illness at the time of the offenses that was sufficient to negate intent. Santonio filed a motion to arrest judgment, which was denied. Santonio appeals.

## ISSUES AND STANDARDS OF REVIEW [8]

¶ 9 First, Santonio argues that the trial court erred in determining that he had im-

6. At oral argument, the State summarized the trial court's extensive efforts to assist Santonio in obtaining counsel. First, the trial court judge actively participated in the search for counsel: He offered help in writing letters to counsel, he suggested counsel, he called around to get conflict counsel, he appointed counsel briefly without a finding of indigence, he enlisted the help of the county attorney's civil division, who advertised for over a year and got three responses, one of whom ... briefly represented Mr. Santonio. And then he gave him fifty free phone calls, again without a finding of indigency, to try to encourage him [to] get an attorney.

Subsequently, the trial court gave him twenty-five additional confidential phone calls and offered to call the jail and tell them not to monitor the calls.

7. With respect to the Motion to Suppress and Limit Testimony, the trial court determined that the issue was moot because the State did not intend to call the experts as part of its case in chief.

8. The State initially challenged our jurisdiction in this case, alleging that Santonio's notice of appeal was untimely. Although the prison deliv-

plicitly waived his right to counsel. "Whether [Santonio] voluntarily, knowingly, and intelligently waived his right to counsel is a mixed question of law and fact. While we review questions of law for correctness, a trial court's factual findings may be reversed on appeal only if they are clearly erroneous." *State v. Pedockie*, 2006 UT 28, ¶ 23, 137 P.3d 716 (footnote omitted).

¶ 10 Second, he argues that the trial court erred by holding him in contempt in a summary proceeding and by refusing to vacate the contempt order. "We review a trial court's exercise of its contempt power to determine whether it exceeded the scope of its lawful discretion, which is subject to constitutional and statutory restraints regarding [due process]." *Gardiner v. York*, 2010 UT App 108, ¶ 11, 233 P.3d 500, *cert. denied*, 238 P.3d 443 (Utah 2010) (alteration in original) (citation and internal quotation marks omitted). "[W]e accept the trial court's findings of fact unless they are clearly erroneous." *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988).

¶ 11 Third, he argues that the trial court improperly questioned mental health experts regarding his mental state at the time of the offense and that the trial court's actions violated rule 704(b) of the Utah Rules of Evidence. A trial court's "[i]nterpretation of a rule [of evidence] constitutes a conclusion of law, which we review for correctness." *State v. Webster*, 2001 UT App 238, ¶ 10, 32 P.3d 976 (second alteration in original) (internal quotation marks omitted).

¶ 12 Fourth, he contests the trial court's denial of his discovery request for a disc containing certain photographs, which he claims contained exculpatory evidence. We review a trial court's denial of a discovery motion for abuse of discretion. *See State v. Tanner*, 2011 UT App 39, ¶ 5, 248 P.3d 61.

¶ 13 Fifth, Santonio argues that the trial court erred by failing to instruct the jury on the definition of "attempt." "Whether the trial court's refusal to give a proposed jury instruction constitutes error is a question of law, which we review for correctness." *State v. Bluff*, 2002 UT 66, ¶ 21, 52 P.3d 1210 (internal quotation marks omitted).[9]

## ANALYSIS

### I. Sixth Amendment

¶ 14 Santonio first argues that the trial court violated his Sixth Amendment right to counsel when it found that he had implicitly waived that right. Furthermore, he argues that the trial court prevented him from obtaining counsel by refusing to facilitate confidential communication with potential attorneys and that his mental health issues prevented him from making a knowing and intelligent waiver of his right to counsel.

¶ 15 "[T]he Sixth Amendment implicitly guarantees criminal defendants the ability to waive their right to the assistance of counsel and proceed pro se." *State v. Pedockie*, 2006 UT 28, ¶ 26, 137 P.3d 716 (citing *Faretta v. California*, 422 U.S. 806, 818–32, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). There are three ways in which a criminal defendant may waive his right to counsel: express or true waiver, forfeiture, and waiver by conduct or implicit waiver. *See id.* ¶ 27. In this case, the trial court concluded that Santonio had implicitly waived his right to counsel. In order for a defendant to implicitly waive his right to counsel, the waiver must be voluntary; that is, it must follow an admonition

---

ery rule provides that in the case of "an inmate confined in an institution . . . the notice of appeal is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing," Utah R.App. P. 4(g), the State contended that Santonio failed to show that his filing was timely by submitting "a notarized statement or written declaration setting forth the date of deposit and stating that first-class postage has been prepaid," *id.* Because Santonio subsequently provided such a statement in the addendum to his reply brief, the State has now conceded that the notice of appeal was timely. We agree and therefore conclude that we have jurisdiction over this appeal.

9. Santonio also challenges the trial court's ruling on the admissibility of several exhibits and its denial of his Motion for Arrest of Judgment. However, his arguments regarding these issues are inadequately briefed, so we do not address them. *See generally State v. Garner*, 2002 UT App 234, ¶ 8, 52 P.3d 467 ("It is well established that Utah appellate courts will not consider claims that are inadequately briefed.").

by the trial court "warn[ing] the defendant of the specific conduct that will give rise to the waiver of his right to counsel" and explicitly informing the defendant "that continuation of the unacceptable conduct will be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel." *Id.* ¶ 37. Furthermore, the waiver must be made knowingly and intelligently. *See id.* ¶ 38. This requires the trial court to inform the defendant "of the dangers and disadvantages of self-representation" and to "ascertain that the defendant possesses the intelligence and capacity to understand and appreciate the consequences of the decision to represent himself" and that he "comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case." *Id.* (internal quotation marks omitted).

■ ¶ 16 Santonio's waiver was voluntary and was made knowingly and intelligently. The trial court repeatedly expressed its frustration with Santonio's dilatory behavior in obtaining counsel, urged him to obtain counsel, and warned him that he might have to proceed pro se if he did not obtain counsel. Then, at a status conference on December 4, 2006, the trial court conducted a colloquy with Santonio that complied with the guidelines set forth by the supreme court. *See id.* ¶¶ 36–39; *State v. Frampton*, 737 P.2d 183, 187–88 & n. 12 (Utah 1987). The trial court reviewed with Santonio the charges and the potential sentences he could receive if convicted, including the fact that he could receive consecutive prison sentences. It informed him of the risks of self-representation, including that he would be unable to make later claims of ineffective assistance of counsel, that the judge would be unable to help him or offer advice, that his lack of familiarity with the law and criminal procedure could hinder his defense, and that he could be subject to rigorous cross-examination if he chose to testify in his own defense. The trial court advised Santonio that "it

would be far better for [him] to get an attorney onboard" but warned, "[B]y your actions, you may deprive yourself of that right." At the time of Santonio's competency hearing on December 20, 2006, he still had not obtained an attorney but had filed a motion to continue. The trial court granted the motion and continued the hearing to February 2, 2007, but reminded Santonio of its previous warning and informed him that, in light of that warning, the court intended to go forward with the competency hearing as scheduled on February 2, regardless of whether Santonio had obtained an attorney by that time. The trial court's meticulous warnings, coupled with Santonio's continued failure to obtain counsel, were sufficient to establish a voluntary, knowing, and intelligent waiver of Santonio's right to counsel.

■ ¶ 17 Santonio asserts that his ability to obtain counsel was hindered because he was prevented from having confidential communications with potential attorneys. However, in response to these concerns, the trial court allowed him twenty-five unmonitored telephone calls on November 13, 2006.[10] As the trial court noted, "[T]here are thousands of other inmates at the jail, through the years, who have been able to obtain an attorney, use an attorney, consult with an attorney, go to trial and go to prelim[inary hearings] while they were in custody." Given the three-and-one-half years Santonio had to obtain counsel prior to the competency hearing, we are unconvinced that his confinement prevented him from doing so,[11] especially given the efforts the trial court made to assist him in consulting with counsel, *see supra* note 6.

■ ¶ 18 We also reject Santonio's argument that his mental health condition hindered him in making a knowing and intelligent waiver of his right to counsel. The trial court found that Santonio was "capable of representing himself" and had "consistently display[ed] the ability to consult with counsel" as well as "the ability to act as his own counsel." Although the trial court found that Santonio did suffer from a mental disorder, it

10. The trial court had allowed Santonio fifty phone calls on previous occasions, but Santonio believed that the calls were being monitored by prison officials.

11. We also note that despite having to represent himself at the competency hearing, Santonio again neglected to obtain counsel by the time of trial over a year later.

concluded that Santonio had "a rational and factual understanding of the proceedings against him or of the punishment specified for the offense charged" and that he had "the ability to consult with … counsel and to participate in the proceedings against him with a reasonable degree of rational understanding." A trial court's finding that a defendant has knowingly and voluntarily waived the right to counsel and is therefore competent to effect such a waiver is an issue of fact, which we review under the clearly erroneous standard. *See State v. Drobel,* 815 P.2d 724, 734 (Utah Ct.App.1991). In raising a challenge to such a finding, the burden is on the appellant to marshal the evidence and demonstrate that it is insufficient to support the finding. *See id.* Santonio has failed to do this, and we therefore uphold the trial court's ruling that Santonio was competent to waive his right to representation.[12]

## II. Contempt

¶ 19 Santonio next asserts that the trial court violated his due process rights by holding him in contempt following a summary proceeding rather than conducting a hearing giving Santonio notice and an opportunity to respond to the contempt charge. While criminal contempt may be punished summarily "where the contemptuous conduct occurs in open court or in the presence of the judge, disturbs the court's business, and necessitates immediate punishment," *Gardiner v. York,* 2010 UT App 108, ¶ 40, 233 P.3d 500, *cert. denied,* 238 P.3d 443 (Utah 2010), "summary criminal contempt sanctions may not be imposed in the absence of a need for immediate punishment," *id.* ¶ 42. The State argues that the trial court did not err by conducting a summary contempt proceeding under the circumstances because Santonio's failure to appear occurred in court, disturbed the court's business by preventing it from proceeding with the hearing, and needed to be punished immediately in light of Santonio's history of dilatory behavior. However, even assuming that a summary contempt proceeding was inappropriate, as Santonio suggests, any error was harmless because Santonio ultimately had the opportunity to be heard on his motion to alter or amend the contempt judgment. *See Von Hake v. Thomas,* 759 P.2d 1162, 1171 n. 7 (Utah 1988) ("[W]hen a failure to appear is being considered as contemptuous conduct and … circumstantial justifications for summary proceedings are lacking, it would be appropriate to subsequently allow the contemner a reasonable opportunity to seek relief from the contempt order by presenting the court with facts previously unknown to it which would constitute a valid defense for the charge of contempt.").

¶ 20 But Santonio also contests the trial court's ruling on his motion to alter or amend. Specifically, he objects to the trial court's finding that Santonio knew what was required of him because he had adequate notice of the correct time of the hearing. He argues that jail personnel's informing him that it was time to go to the hearing could not substitute for personal notice to him from the court and that he could not have known that he was required to comply with the transportation request when he believed he was being taken to court at the incorrect time. However, Santonio received personal notice at the previous hearing and was given a copy of the minute entry indicating that the time of the hearing was 8:30 a.m. Although Santonio maintains that the "8" looked like a "2" on his copy of the minute entry, and the trial court acknowledged that the document could have been misinterpreted, the fact that Santonio was present when the hearing was set and that court personnel informed him of the correct time[13] was sufficient to support the trial court's finding that Santonio knew

---

12. Santonio points out that the trial court determined that he had implicitly waived the right to counsel before conducting the competency hearing. However, the trial court specifically acknowledged that its "earlier ruling would unwind" if Santonio were found incompetent to stand trial but concluded, after considering the evidence of Santonio's mental illness, that Santonio was competent and that the court was "comfortable with its earlier ruling that [Santonio had] waived his right to counsel through his conduct."

13. Not to mention that the "a.m." designation should have led Santonio to question his interpretation of the "8" as an "2" and made it clear that the hearing was in the morning, not the afternoon.

what was required of him.[14] Thus, the trial court did not err in denying Santonio's motion and in holding him in contempt of court.

### III. Expert Opinion Regarding Santonio's Mental State

¶ 21 Santonio claims that the trial court improperly undermined his mental illness defense by requesting that the mental health experts answer the question, "Did the defendant, at the time of the offense, suffer from a mental illness, as defined in [Utah Code section] 76–2–305(4)(a), that prevented him from forming the intent to intentionally, knowingly, or recklessly commit the crimes with which he is charged?" Santonio contends that this request violated rule 704(b) of the Utah Rules of Evidence, which provides,

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Utah R. Evid. 704(b). However, this rule is best interpreted as limiting an expert's testimony before the trier of fact, as the rule specifies that "ultimate issues are matters for the trier of fact alone." *Id.*[15] The State did not call either expert to testify at trial regarding Santonio's mental state,[16] and the question Santonio complains about was never asked or answered before the trier of fact, i.e., the jury.

¶ 22 Although Santonio did object to the State's cross-examination of one of the experts on rule 704(b) grounds at trial, his argument on appeal focuses on the trial court's question as it was asked in the context of the mental evaluation, not the State's cross-examination of the expert. Because rule 704(b) is inapplicable with respect to the mental evaluation itself, and Santonio has failed to provide us with any analysis explaining how the expert's testimony at trial violated rule 704(b), we affirm the trial court's ruling on his objection.

### IV. Access to Photographs

¶ 23 Santonio argues that the trial court erred in refusing him access to a disc containing photographs that he claims contained exculpatory evidence. In ruling on Santonio's motion to compel discovery of the photographs, the trial court noted that the State had "provided copies of the fronts and back of the photographs ... three times previously." Because Santonio failed "to explain what exculpatory evidence he believe[d] he would find," the trial court concluded that his request was essentially "a fishing expedition." While the trial court stated that it "might consider, upon an appropriate motion, an application by [Santonio] for an expert witness to examine the disc in the presence of officials or officers from the Utah County Sheriff's Office," the court saw "no value or safety in allowing [Santonio] to possess the disc himself," particularly given the fact that he had already been provided with copies of the photographs.

¶ 24 Santonio argues that the trial court's ruling was erroneous because the State's failure to give him access to the disc violated his

---

14. Santonio asserts that he did not know that being informed by jail personnel of the time of a hearing could constitute notice. We are not convinced that this alone could not constitute notice, even in the absence of the personal notice he received at the hearing, particularly in light of the fact that, as the trial court noted, "There are ... times when [the court] change[s] hearings for one reason or the other, and because it happens at the last minute, [the court] may call the jail ... and alter the list, and tell them to bring someone." Simply because Santonio chose not to believe the information provided to him by jail personnel regarding the court-ordered hearing time does not mean that the information did not constitute notice.

15. In fact, Utah Code section 77–16a–301, which discusses mental examination of defendants, appears to anticipate that the mental evaluation of a defendant pleading not guilty by reason of insanity may contain information that would not be admissible at trial, as it contains a caveat clarifying that its provisions "do[ ] not require the admission of evidence not otherwise admissible." *See* Utah Code Ann. § 77–16a–301(6) (Supp.2011).

16. Santonio called one of the experts as a witness for the defense.

due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See generally id.* at 84–86, 83 S.Ct. 1194. However, Santonio's reliance on *Brady* is misplaced. The rule discussed in that case applies when the prosecutor fails to disclose evidence the defendant is unaware of, and may be employed to obtain reversal only "where there is discovery, *after trial,* of information which had been known to the prosecution but unknown to the defense." *State v. Bisner,* 2001 UT 99, ¶ 33, 37 P.3d 1073 (internal quotation marks omitted). " '[T]he government's failure to disclose potentially exculpatory information does not violate *Brady* where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source.' " *Id.* (alteration in original) (additional internal quotation marks omitted) (quoting *United States v. Mullins,* 22 F.3d 1365, 1371 (6th Cir.1994)). Because Santonio was aware of the photographs and, in fact, requested access to them prior to trial, the *Brady* rule is inapplicable to this case. Rather, the relevant analysis is whether the trial court abused its discretion in denying Santonio's motion. *See State v. Tanner,* 2011 UT App 39, ¶ 5, 248 P.3d 61 ("Because trial courts have broad discretion in matters of discovery, [a trial court's ruling on a motion to compel discovery] is reviewed for abuse of discretion."). Santonio's brief contains no meaningful analysis explaining how the trial court's denial was an abuse of discretion. *See Hess v. Canberra Dev. Co.,* 2011 UT 22, ¶ 25, 254 P.3d 161 ("To satisfy our adequate briefing requirement, a party's brief must contain meaningful legal analysis." (internal quotation marks omitted)). We therefore affirm the trial court's ruling on Santonio's motion to obtain the disc.

### V. Jury Instructions

 ¶ 25 Santonio argues that the trial court erred by failing to include a definition of "attempt" in the jury instructions. Several of the crimes Santonio was charged with included "attempt" as an element of the crime. The jury was instructed that for purposes of the aggravated assault and assault against a police officer charges, assault included "an *attempt,* with unlawful force or violence, to do bodily injury to another." (Emphasis added.) It was also instructed that disarming a police officer included *attempting* to take the officer's firearm.

¶ 26 Because the jury could have found any of these three crimes to have been committed based on Santonio's attempted actions, Santonio contends that it was necessary to clarify the meaning of "attempt" and argues that the trial court should have instructed the jury that attempt requires a "substantial step" that "strongly corroborates" the defendant's intent to commit the crime. *See generally* Utah Code Ann. § 76–4–101 (2008) (outlining the elements of the inchoate offense of "attempt"). The State argues that any error in the trial court's instruction was invited by Santonio when he failed to raise the matter during the parties' discussion of jury instructions with the court and acknowledged that he had nothing further to discuss when the trial court asked, "[A]re we done talking about jury instructions then?" *See generally State v. Alfatlawi,* 2006 UT App 511, ¶ 26, 153 P.3d 804 ("A defendant invites error where he affirmatively approve[s] of the jury instructions at trial." (alteration in original) (internal quotation marks omitted)).

¶ 27 We do not address the State's argument because we conclude that to the extent this issue was raised in the trial court, the trial court correctly excluded the instruction. The proposed instruction Santonio submitted to the trial court listed the statutory elements of attempt almost word for word.[17] It

---

17. Santonio's proposed jury instruction stated,

A person is guilty of an attempt to commit a crime if he:

 1. engages in conduct constituting a substantial step towards commission of the crime; and

 2. a. either intends to commit the crime; or

 b. when causing a particular result is an element of the crime, he acts with an awareness that his conduct is reasonably certain to cause that result.

In regards to the crime of "attempt," conduct constitutes a substantial step if it strongly corroborates the actor's mental state as intend-

is clear from his argument before the trial court that Santonio's goal in proposing this instruction was to give the jury the option of convicting him of lesser attempt charges. In discussing the disarming a police officer charge, he asked the trial court, "Your Honor, isn't it true that any crime that's attempted but not completed is a three to life instead of five to life?" The trial court answered, "[T]he attempt language is part of the statute, therefore, the three to life doesn't apply.... It's part of the statutory elements, and so the legislature has taken care of that by including it so it's a first-degree felony and you are subject to five to life on that one." Santonio contested the trial court's conclusion, asserting that "the legislature has [appended] all of the criminal code by that statute on attempt and ... [I] take the position that that affects the alleged [disarming a police officer charge]." The court responded, "Take it up on appeal."

¶ 28 There is nothing in this colloquy to suggest that Santonio was merely seeking to have the jury instruction explain the meaning of the term "attempt" as it is used in the definition of assault, as he now alleges on appeal. Rather, it is clear that he was seeking to give the jury the option of convicting him of the lesser offenses of attempted aggravated assault, attempted disarming of a police officer, or attempted assault against a police officer. However, as the trial court observed, Santonio could not have been convicted of attempted offenses with respect to these charges because the definition of "assault" includes an attempt to do bodily harm to another, see Utah Code Ann. § 76–5–102(1)(a) (2008), and attempting to take a firearm from a police officer is an element of the disarming a police officer charge, see id. § 76–5–102.8(2) (Supp.2011). Thus, the trial court correctly ruled that a separate instruction on attempt for the purpose stated by Santonio was inappropriate under these circumstances.

¶ 29 We express no opinion as to whether "attempt" as used in the assault and disarming a police officer statutes should have been defined for the jury because that issue was not presented to the trial court in such a way that it could have understood and ruled on it. "In order to preserve an issue for appeal, it must be ... *specifically* raised such that the issue is sufficiently raised to a level of consciousness before the trial court ... [so as to give] the trial court an opportunity to address the claimed error, and if appropriate, correct it." *State v. Richins*, 2004 UT App 36, ¶ 8, 86 P.3d 759 (emphasis added) (citations and internal quotation marks omitted). "[T]rial courts [are not required] to imagine all reasonable offshoots of the argument actually presented to them before making a ruling...." *Sifrit v. State*, 383 Md. 116, 857 A.2d 88, 100 (2004), *quoted in In re D.V.*, 2011 UT App 241, ¶ 9, 687 Utah Adv. Rep. 35, 265 P.3d 803; *see also Patterson v. Patterson*, 2011 UT 68, ¶ 14, 266 P.3d 828, 2011 WL 5155159 (explaining that the preservation rule prevents parties not only from raising new issues on appeal, but also from raising new arguments on appeal). Because the proposed jury instruction Santonio claims the trial court should have submitted to the jury was characterized in the trial court as describing a separate offense of attempt rather than as merely clarifying the definition of attempt as used in the relevant statutory provisions, Santonio's current argument regarding the instruction was not preserved for appeal.

## VI. Cumulative Error

¶ 30 Finally, Santonio asserts that the cumulative effect of the various errors he alleges warrants reversal. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence ... that a fair trial was had." *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (omission in original) (internal quotation marks omitted). Because we reject all of Santonio's assertions of error, "this issue is moot." *See State v. Decorso*, 1999 UT 57, ¶ 81, 993 P.2d 837.

ing to commit the crime or cause the particular result which is an element of the crime.
 A defense to the offense of attempt does not arise due to factual or legal impossibility if the offense could have been committed if the attendant circumstances had been as the actor believed them to be.
*Cf.* Utah Code Ann. § 76–4–101 (2008).

## CONCLUSION

¶ 31 We conclude that the trial court complied with the appropriate procedure in determining that Santonio had waived his Sixth Amendment right to counsel and uphold its finding that the waiver was voluntary, knowing, and intelligent. We also uphold the trial court's denial of Santonio's motion to alter or amend the contempt finding against him. Because we conclude that rule 704(b) of the Utah Rules of Evidence is only applicable to an expert's trial testimony, we hold that the trial court's pretrial question to the mental health experts did not violate that rule. We also hold that the trial court did not abuse its discretion in denying Santonio's discovery motion regarding the photographs. Finally, we conclude that the trial court properly declined to adopt Santonio's proposed jury instruction on attempt in the only context in which it was raised below. Because we find no error with respect to any of the issues raised on appeal, we also reject Santonio's cumulative error argument. Affirmed.

¶ 32 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.